IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH McADAMS, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| | Civil Action |
| v. | No. 13-1612 (JBS) |
| UNITED STATES OF AMERICA, | [Crim. No. 09-737-001 (JBS)] |
| Respondent. | **MEMORANDUM OPINION** |

APPEARANCES:

John F. Renner, Esq.
JOHN F. RENNER PC
12000 Lincoln Drive West, Suite 401
Marlton, NJ 08053
    Attorney for Petitioner

Anthony J. Mahajan, AUSA
Robert Stephen Stigall, AUSA
OFFICE OF THE U.S. ATTORNEY
970 Broad Street, 7th Floor
Newark, NJ 07102
    Attorneys for Respondent

**SIMANDLE, Chief Judge:**

Petitioner Joseph McAdams seeks to vacate, set aside and correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel under the Sixth Amendment of the U.S. Constitution. McAdams pled guilty to robbing ten banks in New Jersey and Pennsylvania between 2004 and 2008 in Counts 1-10, in violation of 18 U.S.C. §§ 2113(a), 2113(d) & 2, as well

as brandishing a loaded firearm in one of the bank robberies, in Count 11, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) & 2.

On April 15, 2010, this Court sentenced McAdams as a career offender to a term of imprisonment of 235 months on each of Counts 1 through 10 to be served concurrently with each other, followed by a mandatory consecutive term of 84 months on Count 11, for a total term of 319 months, together with restitution in the total amount of $804,084.00.

Petitioner's primary argument is that two of the three crimes used to qualify him as a career offender under the U.S. Sentencing Commission Guidelines Manual ("U.S.S.G." or "the Guidelines") were not crimes of violence, and therefore he was improperly classified as a career offender and should have a received a sentence shorter than 319 months. Petitioner claims that two of the predicate offenses in the Presentence Report ("PSR") were misidentified as "bank robbery" when the convictions were, in fact, for "bank larceny," which he contends are not crimes of violence.[1] The Government concedes that the

---

[1] The PSR listed three predicate offenses for qualifying Petitioner as a career offender: an April 9, 1984 conviction for bank "robbery," a December 13, 1985 conviction for armed robbery, and an April 29, 1985 conviction for bank "robbery." (PSR ¶¶ 198, 206, 209.) Petitioner challenges the use of the two bank "robbery" convictions, but does not dispute that the December 13, 1985 armed robbery conviction is a crime of violence that may be used in the career offender analysis.

bank larceny argument is potentially meritorious, but takes the position that Petitioner was properly sentenced as a career offender based on a second prior conviction for a crime of violence: a 1979 robbery that was listed in the PSR but that was not designated as a predicate offense for career offender status.

The Court ordered supplemental briefing on whether the 1979 armed robbery conviction qualified as a prior felony conviction within the meaning of the sentencing guidelines, and an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) was held. For the reasons explained below, the Court agrees that Petitioner was properly characterized as a career offender and will deny the petition.

1.   Petitioner pleaded guilty to ten counts of bank robbery, in violation of 18 U.S.C. § 2113(a) and 2113(d), and one count of use of a firearm during the commission of a crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). On April 15, 2010, this Court sentenced Petitioner to 319 months of imprisonment (235 months for each of the bank robbery charges, to be served concurrently with each other, and 84 months on the firearm charge, to be served consecutively).

2.   The Presentence Investigation Report ("PSR") advised that Petitioner qualified as a career offender under the U.S.

Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1.[2] The PSR made
this determination based on three predicate offenses: an April
9, 1984 conviction for bank robbery (sentence of 10 years,
execution of sentence suspended, five years probation) (PSR ¶
198); a December 13, 1985 conviction for armed robbery and
unlawful possession of firearms (concurrent sentences of 15
years and 7 years imprisonment) (PSR ¶ 206); and an April 29,
1985 conviction for bank robbery (sentence of nine years
imprisonment) (PSR ¶ 209). Although not marked as predicate
offenses, the PSR also listed other prior convictions: breaking
and entering in March 1977 (sentence of "[i]ndeterminate term,
suspended; 3 years probation and $500 fine") (PSR ¶ 185); simple
assault in August 1978 (fine of $35 plus $25 court costs) (PSR ¶
188); robbery while armed and unlawful use of a dangerous
weapon, among other charges, in January 1979 (sentence of
"[i]ndeterminate term Yardville [Correctional Institution]")
(PSR ¶ 190); and armed robbery and committing a crime while
armed on February 2, 1979 (sentence of "[i]ndeterminate term at

---

[2] The Guidelines provide that a defendant is a "career offender
if (1) the defendant was at least eighteen year old at the time
the defendant committed the instant offense of conviction; (2)
the instant offense of conviction is a felony that is either a
crime of violence or a controlled substance offense; and (3) the
defendant has at least two prior felony convictions of either a
crime of violence or a controlled substance offense." U.S.S.G. §
4B1.1(a).

Yardville") (PSR ¶ 193). The latter conviction for armed robbery on February 2, 1979 is alleged to form a predicate crime for career offender purposes.

3.     The sentencing judge in Superior Court of New Jersey, Somerset County, for the February 2, 1979 armed robbery determined that Petitioner deserved to be sentenced to a custodial term, but "because of your age[3] and because of the fact that you have never been incarcerated before, this court will not sentence you to Trenton State Prison but will sentence you to the Yardville Correctional Institution for the purpose of your rehabilitation and for the purpose of deterring you and others from such criminal activity." (PSR ¶ 196.) The PSR states that information about the earlier 1979 robbery "does not appear in the defendant's computerized criminal history records" and "was obtained from the presentence report prepared for the [February 2, 1979] state robbery case." (PSR ¶ 191.)

4.     The PSR originally calculated that Petitioner had 15 criminal history points, but, at sentencing, this Court reduced that number to 12, subtracting three points for the January 1979 robbery, because the conviction was not properly corroborated by documentary evidence. (See PSR ¶ 190; Sentencing Tr. ("Tr.") at 9:7-22.) Twelve points qualified Petitioner for Criminal History

---

[3] Petitioner was 22 years old at the time of arrest.

Category V, but the Court found Petitioner was a career criminal offender, which increased his criminal history category to Category VI. (Tr. at 9:23-10:3; see also U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI").) The Career Offender finding did not elevate the Offense Conduct Score, which remained at 31. The Guidelines recommended a sentence of 272 to 319 months for Offense Level 31 at Criminal History Category VI (including the 84-month mandatory consecutive increase for the § 924(c) violation). (Tr. at 76:14-24.) Both defense counsel Linda D. Foster, Esq.,[4] and the Assistant U.S. Attorney Anthony J. Mahajan[5] proceeded as if Petitioner were a career offender for purposes of sentencing.

    5.    Petitioner did not appeal his sentence. Rather, on March 19, 2013,[6] he filed this petition to vacate, set aside and correct his sentence [Docket Item 1], which he successfully

---

[4] (See Tr. at 3:2-5 ("we do have some Guideline objections with respect to the final report, but . . . that . . . does not change the criminal history final calculation and score").)
[5] (See Tr. at 5:17-19 ("here it's conceded that the individual is a career offender, that the Criminal History Category is VI").)
[6] In response to the Petition, the Government "affirmatively waives any timeliness objection to Petitioner's claims." (Answer [Docket Item 13] at 3.) In the Third Circuit, the statute of limitations under § 2255 is "not jurisdictional and therefore is subject to equitable considerations such as waiver." United States v. Bendolph, 409 F.3d 155, 164 (3d Cir. 2005). The Court will consider the Petition timely filed, based on the Government's waiver.

moved to amend in July 2013 [Docket Items 5 & 12]. He argues that his counsel was ineffective for two reasons. First, his counsel failed to convey to him a plea offer with a maximum sentence of 235 months, which he would have accepted, had he known of it. (Pet. at 20.[7]) Second, his counsel was ineffective for failing to object to his erroneous classification as a career offender. (Pet. at 23.)

*First Ground: Failure to Convey Plea Offer*

6.    In support of the first argument,[8] Petitioner states that his constitutional right to effective assistance of counsel was violated when his counsel failed to convey a plea offer that used Offense Level 31 and Criminal History Category IV, "permitting the petitioner to receive 235 months, [151 + 84], for both offenses," meaning the bank robberies and the firearm charge. (Pet. at 20-21.) He asserts that the first plea offer contemplated a regular guideline sentence (using Criminal History Category IV), and would have resulted in a lesser sentence than a plea which permitted him to be sentenced as a career offender using Criminal History Category VI.

---

[7] The page numbers reference the Petition's electronic docket page numbers.
[8] Although Petitioner's counsel and Petitioner himself stated at the hearing that Petitioner was no longer asserting a claim of ineffective assistance of counsel based on the failure to convey a plea offer, the Court will nonetheless address it because it was raised in Petitioner's amended petition.

7.    To state a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must show that his or her legal representation fell "'below an objective standard of reasonableness,' as is indicated by 'prevailing professional norms,'" and that he or she "suffer[ed] prejudice as a result." Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

8.    In Missouri v. Frye, 132 S. Ct 1399 (2012), the Supreme Court found that counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 132 S.Ct. at 1408. To show prejudice, defendants "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel" and "a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Id.

9.    Petitioner claims that a prior offer not communicated to him would have set his sentence at 235 months, and the second offer left the sentence to the discretion of the judge, necessarily permitting the possibility of a longer sentence under the career offender provisions. Petitioner argues that he would have accepted the initial plea offer, and he presupposes

8

he would have received a lower sentence, but for his counsel's ineffective assistance.

10.   The Government notes that before Petitioner signed the plea agreement in this case, (see Plea Agreement with Joseph McAdams [Docket Item 13-1] (June 29, 2009)), another plea offer was made to Petitioner on February 19, 2009. (See June 23, 2014 Gov't Submission and February 19, 2009 Plea Offer [Docket Item 22].) Like the Plea Agreement Petitioner eventually signed, the February 19, 2009 plea offer uses Offense Level 31. But contrary to Petitioner's assertion, the plea offer left the sentencing to the judge:

> The sentence to be imposed on Joseph McAdams is within the sole discretion of the sentencing judge . . . . The United States Sentencing Guidelines are advisory, not mandatory.   The   sentencing   judge   may   impose   any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine.   This   Office   cannot   and   does   not   make   any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Joseph McAdams ultimately may receive.

(February 19, 2009 Plea Offer, at 2-3.)

11.   The Government argues that, upon Petitioner's own admission, both plea offers contained the same total offense level (Level 31), and that "Petitioner's argument is premised upon a misunderstanding of the plea agreement he executed." (Answer [Docket Item 13] at 3-4.) The Government asserts that the plea agreement Petitioner signed "did not contain any

stipulations or other language regarding the determination of Petitioner's criminal history category . . . ." (Id. at 4.) The Government concludes that "the Guidelines offense level is exactly the same in both alleged government offers" and, consequently, "Petitioner cannot show that counsel's performance was defective in this respect." (Id.)

12.   Under the Federal Rules of Criminal Procedure, if the plea agreement specifies that an attorney for the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case," "such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). However, if the plea agreement specifies that an attorney for the government will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate," "such a recommendation or request does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). Both plea offers were of the latter type, non-binding as to the sentence to be imposed in the discretion of the Court.

13.   Under Frye, "if the trial court could have refused to accept the plea agreement, and if [the petitioner] fails to show a reasonable probability the trial court would have accepted the plea, there is no Strickland prejudice." 132 S. Ct. at 1411. In this case, Petitioner did not suffer prejudice from his

10

counsel's alleged failure to convey the February 19, 2009 plea offer because the plea offer could not have guaranteed a sentence at Criminal History Category IV. The plea offer explicitly stated that Petitioner's sentence was "within the sole discretion of the sentencing judge." Only the sentencing Court could have determined the criminal history category and Petitioner's sentence. See Fed. R. Crim. P. 11(c)(3) (providing that if the Government offers a plea recommending or agreeing that a specific sentence or range is appropriate, the court "may accept the agreement, reject it, or defer a decision under the court has reviewed the presentence report" and that the court must give certain warnings to the defendant in the event the court "does not follow the recommendation or request")); U.S.S.G. § 6B1.4 ("The court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing"); United States v. Miranda, 979 F. Supp. 1040, 1041 (D.N.J. 1997) ("the Court is not bound by the terms of the parties' plea agreement").) Petitioner's motion for § 2255 relief based on the non-conveyance of the first plea offer is denied.

*Second Ground: Career Offender Status*

14. Next, Petitioner argues that he should not have been classified as a career offender because his federal convictions on April 9, 1984, and April 29, 1985 were incorrectly recorded

in the PSR as violent robberies, presumably under 18 U.S.C. §
2113(a). Rather, he claims that he was convicted of "non-violent
§ 2113(b) robbery" on both occasions.[9] (Pet. at 25, 27.)
Petitioner argues that it may be inferred that the convictions
were issued pursuant to § 2113(b) by the length of the
sentences, which likely would have been longer had they been
entered under Subsection (a) for a defendant with his criminal
history. (Pet. at 25, 27.) In addition, he attaches to his
Petition the April 29, 1985 judgment, which lists the conviction
as "bank larceny," as opposed to bank robbery. (Pet. at 32.) The
April 9, 1984 judgment is slightly less conclusive, stating
merely that he pleaded guilty to "[k]nowingly & willfully [sic]
robbed bank." (Pet. at 31.)

15.   The Government admits that Petitioner's criminal
offender argument as to those two convictions appears to have
merit. (Answer at 5.) The Government explains:

> Although the government has not been able to locate
> certain records, it has obtained a number of documents
> from the archives of both the U.S. Attorney's Office and
> District Court. Based on a review of those records, it
> appears that Petitioner's argument has merit, and that
> his ultimate conviction in both cases was for a violation
> of Title 18, United States Code, Section 2113(b), i.e.,
> that he "knowingly and willfully did take and carry away

---

[9] Subsection (a) criminalizes bank robbery "by force and
violence, or by intimidation." 18 U.S.C. § 2113(a). Subsection
(b) criminalizes the act of taking and carrying away, "with the
intent to steal or purloin, any property or money or any other
thing of value exceeding $1,000 belonging to . . . any bank . .
. ." 18 U.S.C. § 2113(b).

with intent to steal and purloin" money, as opposed to taking such money "by force and intimidation," as he originally charged in both cases under Title 18, United States Code, Section 2113(a).

Certain courts have concluded that "bank larceny" is not a crime of violence. See, e.g., United States v. Smith, 359 F.3d 662 (4th Cir. 2004). The Presentence Report, however, characterized Petitioner's convictions as "bank robbery" convictions, and the foregoing argument was not raised by Petitioner's counsel. Although Petitioner may nonetheless qualify as a "career offender" based on his February 7, 1979[10] robbery conviction and December 13, 1985 armed robbery conviction, the Presentence Report should be corrected to permit Petitioner the opportunity to litigate these arguments.

(Id.) At the hearing, the Government stated that it was no longer contesting the April 9, 1984 and April 29, 1985 convictions as eligible predicate offenses. Thus, the parties agree that two of Petitioner's prior felony convictions were not eligible to be counted as eligible convictions for career offender status. Petitioner does not dispute that his December 13, 1985 conviction may be considered a predicate offense for career offender purposes.

16.  The question before the Court is whether Petitioner was nonetheless correctly classified as a career offender because he has another prior felony conviction for a crime of violence -- armed robbery on February 2, 1979 -- that serves as a second prior felony for career offender status purposes. For

---

[10] According to the PSR, Petitioner was arrested on February 7, 1979, for an armed robbery committed on February 2, 1979. (PSR ¶¶ 193-94.)

13

that 1979 robbery, Petitioner was sentenced to an indeterminate term at "Yardville." (PSR ¶¶ 193-94). Although this conviction was <u>not</u> marked as a predicate offense for career criminal status in the PSR (<u>see</u> PSR ¶¶ 193-97), the Court finds it qualifies as a prior felony within the meaning of U.S.S.G. §§ 4B1.1(a) and 4B1.2, for the following reasons.

17.  Paragraph 1 of the commentary to U.S.S.G. § 4B1.2 defines a "prior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, . . . regardless of the actual sentence imposed." § 4B1.2 cmt. n.1. The commentary further clarifies that "[a] conviction for an offense committed at age eighteen or older is an adult conviction." <u>Id.</u> Petitioner was 22 years old when he committed this robbery, and therefore his conviction is properly considered "an adult conviction." (PSR ¶ 193.) Armed robbery in New Jersey is a crime of the first degree, N.J.S.A. § 2C:15-1(b), meaning that it is punishable by a term of imprisonment of between 10 and 20 years, N.J.S.A. § 2C:43-6(a)(1), and therefore is a felony. Because (1) Petitioner was an adult at the time the offense was committed, (2) the crime for which he was convicted was punishable by a term of imprisonment exceeding one year, and (3) Petitioner's actual sentence is not relevant to the analysis under § 4B1.2, this

14

conviction qualifies as a prior adult felony conviction for purposes of career offender status.

18.   Petitioner acknowledges that he was 22 years old at the time of the robbery, but he argues that he "was tried as a juvenile, sentenced in a juvenile court as a juvenile offender pursuant to former N.J.S.A. § 2A:4-61(h) (repealed 1983), due to this being petitioner's first arrest and was sent to annandale youth correction facility [sic] to serve a 'NO NUMBERED INDETERMINATE JUVENILE SENTENCE, SERVING ONLY 11 MONTHS'." (Pet. at 23.) The PSR does not mention a youth correctional facility in Annandale, N.J. Rather, it indicates that the sentencing judge considered sentencing Petitioner to Trenton State Prison, but instead sentenced him to the Yardville Correctional Institution. (PSR ¶ 196.) Petitioner does not argue that this information is erroneous. Nonetheless, he argues that this robbery cannot be a predicate offense for career offender status.

19.   The Third Circuit has examined this precise issue and held that even a "juvenile" sentence for a felony committed by an adult qualifies as a prior felony for career offender purposes. In United States v. Moorer, 383 F.3d 164, 167-68 (3d Cir. 2004), the defendant-appellant argued that one of his two prior convictions "should not count toward career offender status because he was sentenced as a juvenile rather than an

15

adult," and because he was sentenced to the Yardville facility. The defendant argued that a conviction could count as a "prior felony conviction" under § 4B1.1(a) "only if both 1) the conviction occurs in an adult proceeding (instead of in juvenile court), and 2) the conviction results in an adult sentence." Id. at 167. The Third Circuit disagreed, holding that an adult conviction is one in which the defendant was "convicted as an adult and received a sentence of imprisonment." Id. at 168. The court further held that "an adult conviction qualifies as a 'prior felony conviction' for purposes of career offender status whether that conviction results in an 'adult' or 'juvenile' sentence." Id. The court rejected defendant's argument that his conviction was a "'juvenile sentence' because that sentence was served at Yardville . . . ." Id. In fact, the court observed, "Yardville is a facility that houses adults and is under the control of the Department of Corrections rather than the Department of Human Services." Id. The Third Circuit affirmed the district court's sentencing based on the defendant's career offender status. Id. at 169.

20.  Here, the records of the case conclusively show that Petitioner was an adult when he committed armed robbery on February 2, 1979, and that the crime for which he was convicted was punishable by a term of imprisonment exceeding one year. The fact that he was sentenced to the Yardville facility does not

16

change the significance of the conviction for career offender
purposes.

21.  At the evidentiary hearing, Petitioner's counsel also
argued that the February 2, 1979 felony conviction did not count
as a predicate offense for career offender purposes because
Petitioner did not serve any part of that sentence within the
15-year time period for counting a prior offense. Under
§4A1.2(e)(1) of the Sentencing Guidelines, a prior sentence is
counted for computing criminal history when it is a sentence of
imprisonment "exceeding one year and one month, whenever
imposed, that resulted in the defendant being incarcerated
during any part of [a] fifteen-year period" within the
defendant's commencement of the instant offense. U.S.S.G.
§4A1.2(e)(1).

22.  The Government argues that the February 1979
conviction fell within the 15-year time period because
Petitioner was incarcerated on a parole violation on that
conviction in 1991 until May 17, 1993. According to the PSR,
Petitioner was sentenced on July 6, 1979, and was paroled on
June 13, 1980 "with an original maximum date of July 1, 1984."
(PSR ¶ 197.) However, Petitioner subsequently committed new
offenses and his maximum date was advanced to September 26,
1985. (PSR ¶ 197.) The PSR also notes that on March 6, 1985, a
detainer was lodged for violation of his parole on the 1979

17

offense. (PSR ¶ 193.) The PSR states that Petitioner served a sentence in federal prison from April 29, 1985 to July 22, 1991 and was then turned over to state custody on the detainer. (PSR ¶ 209.) Petitioner remained in state custody from 1991 until May 17, 1993, when he was paroled. The PSR states that Petitioner's maximum date on the February 1979 conviction was ultimately advanced to September 8, 1995. (PSR ¶¶ 193, 197.)

23.  Petitioner argues that the sentence he served in state prison from 1991 to 1993 was not for violation of parole for his February 1979 conviction. Petitioner notes that the PSR gives May 17, 1993 as the parole date for three separate crimes: the February 1979 offense; a January 24, 1980 offense for robbery in Morris County, New Jersey; and a December 13, 1985 offense for armed robbery in Middlesex County, New Jersey. (PSR ¶¶ 190, 193, 206.) Petitioner argues that because these three offenses have the same parole date, it is not clear from the face of the PSR whether he was returned to state custody in 1991 on the 1979 parole violation, or whether he was in state custody to serve a sentence for another crime.

24.  Having considered this dispute at an evidentiary hearing, the Court finds no ambiguity in the PSR regarding why Petitioner was in state custody during those years. The PSR notes that although Petitioner was paroled in 1980 for the 1979 conviction, he was charged with a violation of that parole for

18

committing a new bank robbery on August 22, 1983. A detainer was lodged for that violation on March 6, 1985. (PSR ¶¶ 193, 197.) Shortly thereafter, Petitioner entered federal custody to serve a 9-year sentence on a different conviction for bank robbery. At the hearing, Petitioner asserted that he was transferred back to state custody in 1991 to complete his sentence on the 1985 offense in Middlesex County. However, the PSR specifically states that in July 1991, "[f]ollowing the completion of his federal sentence, [the Petitioner] was transferred to the New Jersey state prison system to serve a sentence for parole violation." (PSR ¶ 211 (emphasis added).) According to the PSR, Petitioner was granted parole on the 1979 offense on May 17, 1993. Thus, the PSR shows that Petitioner was incarcerated for violation of parole on the 1979 robbery conviction between 1991 and 1993, which is within the 15-year time period under §4A1.2(e)(1), for nine of the ten bank robberies herein which extended from November 12, 2004 through October 9, 2008.[11] Aside from pointing to the unavailability of records related to his 1979 conviction, Petitioner makes no argument why this information in the PSR is unreliable. The mere fact that the PSR

---

[11] Nine of the bank robberies occurred within 15 years of May 17, 1993, with the ninth occurring on January 25, 2008. Only the tenth – his robbery of Investors Savings Bank in Whitehouse Station, NJ – occurred slightly beyond the 15 year period, on October 9, 2008.

lists the same parole date for two other offenses does not call into question the fact that he was nonetheless incarcerated on a parole violation from 1991 to 1993 on the 1979 crime.

25.  Significantly, there are other records corroborating the PSR's information. These records show that Petitioner's time in custody between 1991 and 1993 was related to the violation of parole on his 1979 case. A Presentence Report from Petitioner's 1985 conviction in Middlesex County states that in January of 1985, Petitioner had a probable cause hearing for violation of his parole, prior to the detainer being lodged in March of that year:

> The deft. was to have appeared at the Parole Office on 1/24/85 for a Probable Cause Hearing on a Violation of Parole. When he failed to appear, the matter was heard "in absentia" and Probable Cause was found. When the deft. completes his sentence on the federal charges he will be returned to the N.J. State Parole Dept. for a "face to face" Probable Cause Hearing which may result in a revocation of parole and the imposition of an additional sentence.

(Gov't Ex. G-3.) Thus, this PSR indicates that probable cause for violating parole had been found, and Petitioner was to have a formal parole revocation hearing once his federal sentence had been completed.

26.  At the hearing, the Government also produced electronic records from the parole board information system related specifically to Petitioner's 1979 conviction. (Gov't Ex. G-2.) These records confirm that Petitioner had a parole

20

revocation hearing on November 20, 1991, after completing his
sentence in federal prison. His parole was revoked that same
day. (Id.) At the hearing, Richard Turback, the Assistant Chief
of the Revocation Unit at the New Jersey State Parole Board,
testified that information entered into the parole board's
electronic database was usually based on a "source document." He
stated that he had no reason to doubt the accuracy of the data
contained in the electronic records. By letter dated April 15,
2014, Mr. Turback also stated that when Petitioner's parole was
revoked in 1991, Petitioner was ordered to serve a two year and
seventh month term, and was released on May 17, 1993. (April 15,
2014 Letter [Docket Item 16-2].) Petitioner does not set forth
any evidence to suggest that the electronic parole records are
unreliable, and the Court finds no reason to question their
veracity.

27.  In addition, the Government introduced a letter from
Amy Emrich, the Supervising Classification Officer at the New
Jersey Department of Corrections, discussing Petitioner's
incarceration history as it relates to his 1979 offense. (Gov't
Ex. G-1.) At the hearing, Mr. Turback testified that the letter
showed that Petitioner was released on parole in 1980, began to
serve time in an outside institution in 1985, was sentenced and
received back into state custody at Middlesex County on July 30,
1991, and was finally released on parole on May 17, 1993. Mr.

21

Turback testified that this incarceration history was consistent with the information contained in the parole board's electronic database showing that Petitioner was returned for a parole violation in 1991 on the 1979 offense.

28.  Petitioner's counsel argues that the PSR is not sufficiently reliable and the accuracy of its information cannot be verified because the original files related to Petitioner's 1979 conviction have now been lost. Here, however, the Government has presented evidence from the electronic parole board information system, the New Jersey Department of Corrections, and a PSR from an earlier conviction, all of which corroborate the information in the PSR regarding Petitioner's 1991 sentence for violation of parole. Petitioner's counsel does not offer any evidence of irregularity which would call the veracity of these documents into question. Consequently, and in light of Mr. Turback's testimony that he had no reason to believe that the underlying records are inaccurate, the Court is satisfied that the PSR's allegation that Petitioner was in custody from 1991 to 1993 on a violation of parole for his 1979 case has sufficient indicia of reliability to be considered at sentencing. U.S.S.G. § 6A1.3(a) (in resolving any dispute concerning a factor relevant to sentencing, court may consider any relevant information that has sufficient indicia of reliability to support its probable accuracy); United States v.

22

Miele, 989 F.2d 659, 664 (3d Cir. 1993) (noting that even hearsay information may have sufficient indicia of reliability if it is corroborated by other evidence in the record).

29.  Even though this 1979 armed robbery was not originally marked as a predicate offense for career offender purposes in the 2010 PSR for sentencing in this case, the armed robbery is indeed properly considered a prior violent felony within the meaning of U.S.S.G. § 4B1.1(a) and §4A1.2(e)(1). Because Petitioner has two prior felonies that are crimes of violence, as required by § 4B1.1(a) -- the February 2, 1979 armed robbery and the December 13, 1985 armed robbery -- Petitioner suffered no prejudice by his counsel's failure to object to the arguably erroneous labeling of two other convictions as prior felonies as crimes of violence.

30.  The Career Offender status based on the two predicate crimes of violence in 1979 and 1985 thus governs the sentencing on Counts 1-9, and the Sentencing Guidelines calculation on those crimes remains Offense Level 31, Criminal History Category VI. The conviction for bank robbery on Count 10, if it were the only crime of conviction, would have been governed by Criminal History Category V, since career offender status would not apply to Count 10 and the offender otherwise had 12 criminal history points, as explained above. This does not change the guidelines for Counts 1-9, however, since no additional offense conduct

23

points were added beyond the sixth bank robbery under the
Sentencing Guidelines grouping rules, U.S.S.G. § 3D1.4.[12] Thus,
Count 10 added nothing to the recommended guideline range
established for the first six of this offender's bank robberies.
The fact that, in retrospect, the Career Offender Status applied
to only Counts 1-9 changes nothing, since the grouping rules
yield the same result on Counts 1-9 as on Counts 1-10. Likewise,
the conviction on Count 11 continues to call for a mandatory
consecutive sentence of at least 84 months for use of firearm
during the crime of violence in the tenth bank robbery, pursuant
to 18 U.S.C. § 924(c)(1)(A)(ii), unaffected by whether Career
Offender status applied to this October 9, 2008 offense.

31.  For the reasons explained above, Petitioner cannot
show that he suffered prejudice by any alleged failures of his
counsel during plea negotiations or at sentencing. His Petition
is therefore denied. An accompanying Order will be entered.

32.  Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a
circuit justice or judge issues a certificate of appealability,
an appeal may not be taken to the court of appeals from the
final order in a proceeding under section 2255." A certificate

---

[12] As applied in this case, § 3D1.4 provides that where "More
than 5" similar bank robbery crimes are grouped, one will "add 5
levels" to the offense level for the bank robbery having the
highest level. See PSR ¶ 177. Thus, the convictions for the
seventh, eighth, ninth, and tenth bank robberies did not
increase the Guideline score.

of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" <u>Banks v. Dretke</u>, 540 U.S. 668, 705 (2004) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003)). Here, jurists of reason could not disagree with the Court's resolution of Petitioner's claims. Under the standard recited above, the Court will deny a certificate of appealability.


 <u>**April 27, 2015**</u>                       <u>**s/ Jerome B. Simandle**</u>
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge