IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOSEPH McADAMS,

               Petitioner,

     v.

UNITED STATES OF AMERICA,

               Respondent.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-1612 (JBS)

[Crim. No. 09-737-001 (JBS)]

**MEMORANDUM OPINION**

**SIMANDLE, Chief Judge:**

After Joseph McAdams pleaded guilty to ten counts of bank robbery and one count of use of a firearm during the commission of a crime, this Court, in April of 2010, sentenced him as a career offender to a term of imprisonment of 319 months. McAdams subsequently filed a petition to vacate, set aside and correct his sentence pursuant to 28 U.S.C. § 2255 [Docket Item 1], which the Court denied on April 27, 2015. [Docket Item 32 & 33.] He now seeks reconsideration of the Court's opinion under Fed. R. Civ. P. 59(e) [Docket Item 35], and separately moves to withdraw appointed counsel and appoint new counsel. [Docket Item 36.] For the reasons that follow, both motions will be denied.

The Court finds as follows:

1.  Petitioner Joseph McAdams pleaded guilty in 2009 to ten counts of bank robbery in violation of 18 U.S.C. § 2113(a)

1

and 2113(d), and one count of use of a firearm during the commission of a crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). In April of 2010, this Court found that McAdams was a career offender, and sentenced him to a term of imprisonment totaling 319 months, together with restitution in the total amount of $804,084.00. On March 19, 2013, McAdams filed a petition under 22 U.S.C. § 2255 seeking to vacate his sentence, in part on the ground that he was erroneously classified as a career offender.[1]

2.    After reviewing the Presentence Report ("PSR") and underlying documents, the Government conceded that two of the McAdams's previous felony convictions for bank larceny may not qualify as "crimes of violence" for purposes of calculating career offender status. Nonetheless, the Government argued that a career offender designation was proper because McAdams still had two eligible offenses: a February 7, 1979 robbery conviction in Somerset County, New Jersey, and a December 13, 1985 armed robbery conviction in Middlesex County, New Jersey. [Docket Item 13.] The Court directed supplemental briefing, ordered an

---

[1] The Guidelines provide that a defendant is a "career offender if (1) the defendant was at least eighteen year old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

evidentiary hearing, and appointed counsel to represent McAdams. [Docket Items 15, 23, & 25.]

3.     At the evidentiary hearing, counsel for McAdams, Mr. John Renner, Esq., argued that the February 2, 1979 felony conviction did not count as a predicate offense for career offender purposes because Petitioner did not serve any part of that sentence within the required period specified by the Sentencing Guidelines. Under § 4A1.2(e)(1) of the Guidelines, a prior sentence is counted for computing criminal history when it is a sentence of imprisonment "exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of [a] fifteen-year period" within the defendant's commencement of the instant offense. U.S.S.G. § 4A1.2(e)(1). Petitioner contested the accuracy of the Presentence Report ("PSR") prepared for his present conviction, which noted that he was granted parole on the 1979 offense on May 17, 1993. Of the ten bank robberies for which McAdams is currently serving time, nine were committed within 15 years of that date.

4.     After hearing testimony from Richard Turback, the Assistant Chief of the Revocation Unit at the New Jersey State Parole Board, and after thoroughly reviewing the documents

submitted in connection with the hearing,[2] the Court concluded in
that the records were reliable and overwhelmingly suggested that
McAdams was in custody from 1991 until May of 1993 on a
violation of parole for his 1979 conviction in Somerset County.
Thus, his 1979 conviction fell within the 15-year time period
under § 4A1.2(e)(1), and could properly be counted as one of two
predicate offenses qualifying him as a career offender. See
McAdams v. United States, Civ. No. 13-1612, 2015 WL 1914631, at
*6-10 (D.N.J. Apr. 27, 2015).

    5.  McAdams, acting *pro se*, now moves to alter or amend
judgment under Fed. R. Civ. P. 59(e),[3] claiming that "new"

---

[2] In particular, the Court considered the PSR in Petitioner's
underlying case, a presentence report from an earlier
conviction, electronic records from the parole board information
system relating to Petitioner's 1979 conviction, and a letter
from the Supervising Classification Officer at the New Jersey
Department of Corrections discussing Petitioner's incarceration
history as it relates to his 1979 offense.

[3] The Court finds that McAdams' motion was filed within the time
frame allowed under Fed. R. Civ. P. 59(e). Rule 59(e) requires a
motion for reconsideration to "be filed no later than 28 days
after entry of the judgment." Fed. R. Civ. P. 59(e). The Court
entered its Order denying McAdams' requested habeas relief on
the docket on April 27, 2015, and a motion under Rule 59(e) was
therefore due by May 25, 2015. The time stamp indicates that the
Clerk of the Court received McAdams' motion on May 26, 2015.
[See Docket Item 35.] In the Third Circuit, a document from a
prisoner is deemed filed at the moment it is delivered to prison
officials for mailing to the district court, and not the day it
is received by the Court. See U.S. v. Fiorelli, 337 F.3d 282 (3d
Cir. 2003) ("[T]he prison mail room is essentially an adjunct of
the clerk's office, and a jurisdictionally sensitive document is
deemed filed on deposit." (internal quotations and citation
omitted)). Because the Court received McAdam's motion just one
day after the 28-day filing deadline and because McAdams

evidence, namely, a printout of his parole records, undisputably shows that he had completed his sentence on the 1979 conviction by August 1989 at the latest. Thus, argues McAdams, because that conviction falls outside the 15-year time period specified in U.S.S.G. § 4A1.2(e)(1), it should not have been counted as a predicate offense for career offender status. (Mot. to Alter or Amend J. [Docket Item 35], at 3-4.) He also moves to appoint new counsel, claiming that Mr. Renner, in declining to appeal this Court's decision and refusing to speak with McAdams about filing a Rule 59(e) motion, "has displayed a lack of interest, professionalism, and duty to effectively advocate for his client." (Mot. to Withdraw Appointed Counsel [Docket Item 36], at 2.)

6.    In this district, a Rule 59(e) motion to alter or amend judgment is reviewed under the same standard as a motion for reconsideration under L. Civ. R. 7.1(i). A party seeking reconsideration must set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its prior decision. L. Civ. R. 7.1(i). "As such,

---

indicates that he signed the motion on May 22, 2015, three days before the deadline, the Court will deem the motion timely. <u>See United States v. Grana</u>, 864 F.2d 312, 313 (3d Cir. 1989) ("[I]n computing the timeliness of filings which are jurisdictional in nature, any delay by prison officials in transmitting notice of a final order or judgment . . . should be excluded from the computation.").

a party seeking reconsideration must satisfy a high burden, and must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

7.   Reconsideration has always been considered an "extraordinary remedy" and is "granted very sparingly." Grossberger v. Saldutti, 834 F. Supp. 2d 209, 216 (D.N.J. 2011) (internal quotations and citation omitted). A motion for reconsideration is an extremely limited procedural vehicle – it does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor "may [it] be used to relitigate old matters, [or] to raise arguments or present evidence that could have been raised prior to the entry of judgment." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process. S.C. ex rel.

6

C.C. v. Deptford Twp Bd. of Educ., 248 F. Supp. 2d 368, 381
(D.N.J. 2003). Therefore, in order for reconsideration to be
warranted, the party seeking reconsideration must specifically
rely upon one of the qualifying bases, see L. Civ. R. 7.1(i),
and not merely a recapitulation of prior cases and arguments,
nor an expression of disagreement with the Court's earlier
decision. See Arista Records, Inc. v. Flea World, 356 F. Supp.
2d 411, 416 (D.N.J. 2005).

8.   McAdams brings this reconsideration motion under the
second factor. He attaches a printout of his parole record and
argues that because this document was not available during his
hearing, it should be considered "new evidence." However, a
close inspection of the printout reveals that the information
contained within it is not in fact new. Although it is in a
different format, the document contains the exact same
incarceration and parole history for his February 1979 offense
that was detailed in a letter from Amy Emrich at the New Jersey
Department of Corrections, which this Court explicitly
considered during McAdams's hearing. Both records contain
incarceration and parole details for Petitioner while he was
under the custody of the New Jersey Department of Corrections,
under the inmate numbers YN84446 and P237377. Each dated entry
in the printout corresponds to a change in McAdams's
incarceration status, and appears to be identical to the entries

7

listed in the Emrich letter.[4] Indeed, it is conceivable that in compiling McAdams's incarceration and parole history for the

---

[4] For example, the first few entries in the printout under the inmate incarceration number YN84446 states:

| | Date | Inmt# Actn-cd | Frm To1.2.3.. | Sta__ Rep |
|---|---|---|---|---|
| RCVD FRM COMMUNITY.NEW# | 7/06/79 | YN84446 AINCT | ... IY8...... | RES__ IY8 |
| PREV YTH-RCPTN | | a:-US =UNITED-STATES/FDRL | | |
| PREV NJ TERM RCRD | 7/06/79-15 | YN84446 TA9 | RepBy: PREV YTH-RCPTN | |
| SOMERSET-COUNTY | | Tracking Cd: 10- | SentBegan | 7-06-79 |
| . . . | | | | |
| TO MYCF,HIGH-PT | 7/25/79 | YN84446 MI | IY8 IA2...... | RES__ IY8 |

(Ex. to Mot. to Alter or Amend J., at 2-3.) The printout shows that McAdams was received at Somerset County to begin his sentence on July 6, 1979, and was moved to MYCF on July 25, 1979. The first two entries of the Emrich letter contain essentially the same information:

**NJSP# YN84446/693946A – 5 years, Armed Robbery**
**Sentenced/Housed at Somerset County Jail – 07/06/1976**
**Received at Mountainview Youth Correctional Facility – 07/25/1979**

(Gov't Ex. G-1.) Nearly every subsequent entry in the printout is also listed in the Emrich letter, including the entries relating to McAdams's release to parole on May 17, 1993:

| | Date | | Frm To | Sta Rep |
|---|---|---|---|---|
| INST TRNSFR,CLSFD...... | 2/23/93 | P237377 MI TICL | IL1 IR6...... | RES_$ IL1 |
| EJSP,SECAUCUS-EHU | | | | 24feb93 +24feb93 |
| TO EJSP,E-JERSEY-SP | 5/13/93 | P237377 MI | IR6 IR1...... | RES_$ IR6 |
| | | | | 13may93 +13may93 |
| PAROLE DATE,NJ CASE.... | 5/17/93 | P237377 PL | IR1 P-9-2N... | CPO_$ P-9 |
| DO9-NEWARK | | a:ES =ESSEX-COUNTY | | Expire10-15-2001 |
| | | | | 17may93 +17may93 |
| NJ PAR, INTENSE | 5/17/93-45 | P237377 CP8 | P-9 | PINT$ P-9 |
| | | | | 17may93 +17may93 |
| . . . | | | | |
| NJ PAR, REGULAR SPVSN | 12/01/93 | P237377 CQ6 | P-9 | PREG_ P-9 |
| | | | | 1dec93 +1dec93 |

(Ex. to Mot. to Alter or Amend J., at 7-8.) The Emrich letter likewise states:

letter, the New Jersey Department of Corrections used the printout as the source of their information.[5] Because the material in the document McAdams now attaches was already considered by the Court in another form, it is not genuinely "new evidence." See, e.g., Grimes v. Ricci, No. 08-5027, 2011 WL 3652173, at *5 (D.N.J. Aug. 18, 2011) (finding that expert report was not newly discovered evidence for reconsideration purposes because the issue contained in the expert report had been raised by trial counsel through witness testimony).

9. Even assuming the printout might contain some new information, it was not "newly discovered." McAdams asserts that he intended to provide the printout at the evidentiary hearing but was unable to do so "because the documents were sent back to the FCI-Danbury along with other property by the Bureau of Prisons while he was on writ for the evidentiary hearing." (Mot. to Alter or Amend J. at 2-3.) McAdams's explanation, however, is

---

Transferred to East Jersey State Prison – 02/23/1993
Released on Parole Status – 05/17/1993
Parole/Regular Supervison – 12/01/1993

(Gov't Ex. G-1.)

[5] In addition, McAdams himself refers to this printout as the "'source documents' which Richard Turback referred to in his testimony at the evidentiary hearing." (Mot. to Alter or Amend J. at 2.) At the hearing, the Government introduced into evidence screenshots of the New Jersey State Parole Board's electronic database relating to McAdams's parole history, and Mr. Turback, the Assistant Chief of the Revocation Unit at the Parole Board, testified that the information contained in the electronic database was based upon a "source document."

insufficient. The Third Circuit has made clear that "new evidence" for reconsideration purposes does not mean evidence that a party submits to the court after an adverse ruling. Rather, the party must show that the evidence could not be submitted earlier because it was not previously available. See Howard Hess Dental Lab. Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 252 (3d Cir. 2010); De Long Corp. v. Raymond Int'l, Inc., 622 F.2d 1135, 1139-40 (3d Cir. 1980). Here, the fact remains that the material was in McAdams's possession before the hearing.

10.   That the Bureau of Prisons sent McAdams's property back to the prison and deprived him of the document during his actual hearing is of no consequence. Regardless of what the Bureau of Prisons did, Petitioner could still have sent a copy of the document to the Court along with his brief. He apparently did not do so, and provides no explanation that would excuse his lack of diligence. Because McAdams could have brought the printout to the Court's attention before his hearing, the printout cannot be considered evidence that is "newly discovered." See Blystone v. Horn, 664 F.3d 397, 416 (3d Cir. 2011) (affirming denial of reconsideration because evidence was "not in fact newly discovered" where petitioner "had possession of it many months before" district court rendered its decision); Hess, 602 F.3d at 252 (evidence not considered "new evidence"

10

where the record did not indicate that it was unavailable to the plaintiffs at the time they filed for summary judgment); Menke v. Baker, No. 10-2585, 2012 WL 3146876, at *3 (D.N.J. Aug. 1, 2012) (relief is unavailable "where the evidence provided in support of such a motion was available but was not submitted" with the prior motion.). Consequently, the Court finds that reconsideration is not warranted under the "newly discovered evidence" prong.

11.   Although Petitioner's motion does not raise any other grounds for relief and must be denied, the Court, having closely examined the printout and reviewed its earlier opinion, also notes that a denial would work no manifest injustice because the information contained in the printout is consistent with the other evidence presented in this case, and would not change the outcome. See Sync Labs LLC v. Fusion Mfg., No. 11-3671, 2014 WL 37124, at *4 (Jan. 6, 2014) (reconsideration under the third prong requires a party to demonstrate that the decision "(1) was without support in the record (or case law) or (2) would create 'manifest injustice' if not addressed."). In its earlier opinion, the Court reviewed several pieces of evidence which showed that McAdams was in custody from 1991 to 1993 on a violation of parole for his February 1979 Somerset County offense, and thus his Somerset County conviction qualified as a predicate offense under § 4A1.2(e)(1). The PSR that was prepared

11

for McAdams noted that in July 1991, "[f]ollowing the completion
of his federal sentence, [the Petitioner] was transferred to the
New Jersey state prison system to serve a sentence for parole
violation." (PSR ¶ 211 (emphasis added).) According to the PSR,
Petitioner was granted parole on the 1979 offense on May 17,
1993. Another Presentence Report that was prepared for a
separate conviction confirmed that McAdams had violated his
parole on his February 1979 conviction, and was set to serve
additional time on that offense after completing his federal
sentence in 1991. Finally, electronic parole records from the
New Jersey Department of Corrections and the Emrich letter
separately showed that McAdams was incarcerated on a parole
violation until 1993. McAdams v. United States, Civ. No. 13-
1612, 2015 WL 1914631, at *7-9 (D.N.J. Apr. 27, 2015.)

12.  The information in the printout is consistent with all
of the other evidence that was presented in this case, and a
different outcome is not warranted. As already described above,
the contents of the printout were reproduced in the Emrich
letter, which the Court explicitly considered in its April 27,
2015 opinion. Like the Emrich letter, the printout shows that
McAdams was released on parole in 1980 on his February 1979
conviction and continued to be on parole until he was sent to a
federal institution in April 1985 to serve time on a different
sentence. He was released from the federal facility back into

12

state custody on July 30, 1991, and was finally released on
parole on May 17, 1993. (Ex. to Mot. to Alter or Amend J., at 4-
8.)

   13.  McAdams argues that his incarceration from 1991 to
1993 was for a 1995 conviction in Middlesex County and *only* for
that conviction, because, according to him, the printout
"confirms the Somerset County sentence was satisfied and ended
on 4/11/1985," and that "on 8/31/1989, McAdams had satisfied all
parole time for his prior state convictions." (Mot. to Amend or
Alter J. at 3-4.) McAdams appears to refer to the following
entries in the printout, indicated below by the solid boxes:

| | | | | |
|---|---|---|---|---|
| PAROLE DATE, NJ CASE.... 6/13/80   YN84446 PL | | IA3 P-5...... | CPO__  IA3 |
| DO5-ELIZABETH | | | Expire 9-08-1995 |
| TO DO2-H.ORANGE | 6/13/80-45 YN84446 MP | P-5 P-2-2N... | CPO__  P-5 |
| | a:EG  =ESSEX-COUNTY | | |
| NJ PAR, INTENSE | 6/13/80-50 YN84446 CP8 | P-2 | PINT_  P-2 |
| NJ PAR, REGULAR SPVSN | 6/16/80   YN84446 CQ6 | P-2 | PREG_  P-2 |
| NJ PAR, QTRLY | 6/12/81   YN84446 CQ5 | P-2 | PQTR_  P-2 |
| NJ PAR, SEMI-ANNUAL | 12/10/82  YN84446 CQ4 | P-2 | PSA_   P-2 |
| NJ PAR, REGULAR SPVSN | 1/27/84   YN84446 CQ6 | P-2 | PREG_  P-2 |
| PAROLEE CONTACT LOST | 1/10/85   YN84446 SP MG | P-2 | SPMG_  P-2 |
| | | | End Dt 4-11-1985 |
| NJ PAR, INTENSE | 4/11/85-45 YN84446 CQ8 | P-2 | PINT_  P-2 |
| PAR, SRVNG-TM IN OS-INST 4/29/85   YN84446 SP OI | | P-2 | SPOI_  P-2 |
| UNITED-STATES/FDRL | | | End Dt 8-31-1989 |
| TO DO13-NEWARK | 2/01/88   YN84446 MP | P-2 P13-6B... | CPO__  P-2 |
| | a:-US =UNITED-STATES/FDRL | | |

```
TO UNSPFD-PAR-OFC*          8/31/89    YN84446 MP        P13 P**...... CPO__ P13

TO DO13-NEWARK              8/31/89-45 YN84446 MP        P** P13--T... CPO__ P**
   PAROLE OFFICER T         a:-US =UNITED-STATES/FDRL

PAR,SRVNG-TM IN OS-INST     8/31/89-50 YN84446 SP OI         P13      SPOI  P13
   UNITED-STATES/FDRL                                            End Dt 7-30-1991

* * * * Current * * * *     Date      Inmt#   Actn-cd    Frm To1.2.3.. Sta__ Rep
RCVD FR PAR, NW CMTMNT,     7/30/91   P237377 APNCT       P13 IMX1W.... RES_6 IY9
   CJ-MIDDLESEX             a:ES =ESSEX-COUNTY
                           Lv-Arng = MS  LVNG WITH SPOUSE ONLY
                           Citznshp: Y Fbi# 250183R7
                           Eye BRO.  Hgt 600.  Wgt 295.

NJ CMTMNT FRM PAROLE        7/30/91-15 P237377 TPA        RepBy: PREV PRSN-RCPTN
( See commitment on earlier record for other time owed)
MIDDLESEX-CNTY             Tracking Cd: 10-                SentBegan  7-30-91
NJ Adult Determinate       Has both C/S and C/C offenses. Jail Credits  303
2c, Min-set                                               Comutatn Tm  1523
Class: ROBBERY            Ofns-Trm: 0500-1500             Tot-Trm: 0500-1500
MstSerOfns: ROBBERY,1 + WPNS,2ND                          OfnsCd: HC- --- -1
```

(Id. Ex., at 4, 5.)

    14.  The Court is unpersuaded by McAdams's interpretation
of the record. Although the printout has an "End Dt 4-11-1985"
notation, the full entry refers to when McAdams lost contact
with the parole office, and the "end date" appears to indicate
when that "lost contact" status concluded – that is, when parole
reporting resumed. Indeed, the next entry in the printout
records McAdams as being on parole again under the same inmate
incarceration number on the same date as the previous entry's
"end date." (Id.)

    15.  Nor does the record clearly indicate, as McAdams
believes, that all parole obligations for his prior state
convictions were satisfied on August 31, 1989. The "End Dt 8-31-
1989" notation is connected to the entry noting his
incarceration at a federal prison ("PAR, SERVNG-TM IN OS-INST"),

and the Court does not read it to mean that McAdams's state
parole obligations ended on that date. The August 31, 1989
entries in the printout, rather than noting the conclusion of
the State's parole interest, notes only that McAdams was moved
from federal custody to an "unspecified parole office." (Id. at
5 ("TO UNSPFD-PAR-OFC*").) The next entry in the record shows
that he was moved back into federal prison that same day, and
remained on parole. Read in context, the "end date" appears not
to signify the satisfaction of parole, but the end of the
particular custody status connected to that entry.[6] Moreover,
there are no entries between the 1984 and 1991 denoting that
McAdams had completed all of his state parole obligations.[7]

16.   On the contrary, and consistent with the other
evidence in the case, the printout suggests that McAdams served
time for his Middlesex County conviction *and* for a parole
violation on his Somerset County conviction when he re-entered

---

[6] Likewise, the Court interprets the "End Dt 7-30-1991" notation
connected to the August 31, 1989 entry "PAR, SERVNG-TM IN OS-
INST" to mean the conclusion of federal custody, since the next
entry shows that on that date, July 30, 1991, McAdams was moved
to a state facility.
[7] The Court compares the entries above with the last entry of the
printout, which shows that McAdams completed his parole
obligations for the Middlesex County offense on October 15, 2001
with an entry titled "END INTEREST AT NJ MAX." No similar
notation appears in the entries from 1985 to 1991 to indicate
the completion of parole obligations for his February 1979
Somerset County offense. (See Ex. to Mot. to Alter or Amend J.,
at 8.)

state custody in 1991. First, as noted by the dashed box in the reproduced printout above, the "PAROLE DATE, NJ CASE" entry with the notation "Expire 9-08-1995" indicates that McAdams's parole date for the Somerset County offense was advanced to September 8, 1995. The PSR prepared for his Middlesex County offense confirms that McAdams's maximum date was advanced to 1995 as a result of his committing other offenses. (Gov't Ex. G-3.) In other words, McAdams was almost certainly still on parole for his February 1979 Somerset County offense when he committed new offenses in violation of that parole, and owed time on that violation. This is consistent with the PSR prepared for this underlying criminal case, which "note[d] that although Petitioner was paroled in 1980 for the 1979 conviction, he was charged with a violation of that parole for committing a new bank robbery on August 22, 1983." McAdams, 2015 WL 1914631, at *7.

17.  Second, while the July 30, 1991 entry in the printout McAdams now attaches notes that he is a new commitment on a conviction from Middlesex County, it also states, "NJ COMTMNT FRM PAROLE." Furthermore, the entry states that McAdams entered state custody with "both C/s [consecutive] and C/C [concurrent] offenses," which suggests that he was serving more than the one sentence for Middlesex County. (Ex. to Mot. to Alter or Amend J., at 5.) This part of the record is therefore consistent with

16

all of the other evidence in the case, which the Court examined in detail in its earlier Opinion, showing that McAdams was found to have violated parole on his 1979 offense, and an additional sentence was imposed which he served in 1991, after completing his time in federal custody.[8]

18.  Having reviewed its Opinion and the evidence in this case, the Court finds that its decision to deny Petitioner's habeas petition was sound. After scrutinizing the printout, the Court also finds that manifest injustice would not result from a denial of the instant motion, because the printout is consistent with the other evidence showing that McAdams's incarceration from 1991 to 1993 was related to his February 1979 offense. See Waller v. Foulke Mgmt Corp., No. 10-6342, 2012 WL 924865 (D.N.J. Mar. 19, 2012) (denying motion for reconsideration and noting that outcome would be no different because new evidence did not conflict with existing evidence in the case). Petitioner's motion for reconsideration will therefore be denied.

---

[8] In addition to the PSR for the instant underlying criminal case, the Court examined the PSR that was prepared for the Middlesex County offense, which confirmed that a probable cause hearing was held on McAdams's parole violation and that probable cause was found "in absentia" when McAdams did not appear for his hearing. The PSR further noted that McAdams was set to have a formal parole revocation hearing after serving his federal sentence "which may result in . . . the imposition of a new sentence." McAdams, 2015 WL 1914631, at *8 (quoting Gov't Ex. G-3).

19.   The Court will also deny Petitioner's motion to withdraw appointed counsel and appoint new defense counsel. The Court notes at the outset that there is no Sixth Amendment right to appointment of counsel in collateral proceedings, and a petitioner seeking habeas relief has no constitutional right to effective assistance of counsel. See Coleman v. Thompson, 501 U.S. 722, 752 (1991); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("right to appointed counsel extends to the first appeal of right, and no further"); Wainwright v. Torna, 455 U.S. 586, 587-88 (1992) (because "[habeas petitioner] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel"). Instead, "the decision to appoint counsel in proceedings brought under § 2255 is . . . a matter of discretion. In re Demelio, 350 Fed, App'x 718, 720 (3d Cir. 2009) (citing Finley, 481 U.S. 551, 555 (1987)). A district court may, under 18 U.S.C. § 3006A(a)(2)(B), appoint counsel to a person seeking relief under 28 U.S.C. § 2255 if "the interests of justice so require."

20.   In deciding whether the grant such a request, the Court must decide "if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court." Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991). The Court must consider the complexity of the factual and legal issues in the case, as well

18

as the pro se petitioner's ability to investigate facts and
present claims. Id.

21.  McAdams has not offered any reasons why he is entitled
to representation at this stage of the proceedings, nor does the
Court find that the circumstances here compel the appointment of
new counsel. First, McAdams's habeas case turned simply on
whether his February 1979 conviction qualified as a predicate
offense for career offender status, and there is no evidence
that his appeal will present particularly complex or novel legal
issues. While the factual record is less straightforward, it is
already complete, and an evidentiary hearing has already been
held. New and extensive fact-finding is no longer required, the
issues in this case have been narrowed, and the case is capable
of resolution on the present record. Furthermore, McAdams's
motions in these proceedings have been clear and articulate, and
give every indication that he has a good grasp of the legal and
factual issues in his case. That he went ahead and filed
coherent motions for reconsideration and for appointment of new
counsel shows that he is capable of representing himself in
pursuing further relief.

22.  Second, the Court notes that it has already considered
numerous briefs and supplemental submissions by both parties in
connection with Petitioner's habeas petition, along with all of
the underlying evidence in this case. McAdams also had an

evidentiary hearing where he was ably represented by an Mr. Renner, an experienced member of this Court's Criminal Justice Act Panel. The Court has now also considered McAdam's motion for reconsideration and the attached printout, even though it did not qualify as previously unavailable new evidence. At this juncture, all of the arguments raised by Petitioner in his habeas petition have been addressed, and there are no potentially meritorious issues that remain to be decided.

23.  Moreover, nothing in the record suggests that Mr. Renner's representation was deficient. McAdams attaches two letters from his attorney written after the Court's decision and argues that counsel failed in his professional duty when he declined Mr. McAdams's request to seek reconsideration, and declined to petition for a certificate of appealability. (Mot. to Withdraw Counsel, at 1-2.) Having reviewed the letters, the Court disagrees that Mr. Renner's actions fell below an objective standard of reasonableness. In the first letter, dated May 5, 2015, Mr. Renner accurately explained to McAdams that in order to obtain to a certificate of appealability from the court, the petitioner must demonstrate "'a substantial showing that he or she has been denied a constitutional right,'" or, in other words, show that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner . . . .'" (May 5, 2015 Letter,

20

Ex. 1 to Mot. to Withdraw Counsel [Docket Item 36] (citing 28 U.S.C. § 2253(c)(2) and Slack v. McDaniel, 529 U.S. 473, 484 (2000)).) In the second letter, Mr. Renner informed McAdams that he had reviewed the Court's Opinion, the transcript of the hearing, and the evidence submitted to the Court, and then went on to summarize the Court's reasoning. (May 26, 2015 Letter, Ex. 2 to Mot. to Withdraw Counsel [Docket Item 36].) He explained that "[i]n your case, Judge Simandle provided a thorough analysis of the evidence in concluding that the Pre-Sentence Report prepared for your original sentencing hearing on April 15, 2010 was accurate as based upon evidence Judge Simandle deems sufficiently reliable." (Id.) Noting again the standard that must be met for a certificate of appealability to issue, Mr. Renner concluded that based upon his review of the case, there was no meritorious constitutional issue on which to seek a certificate of appealability. (Id.)

24. Based on the present record, the Court can find no fault with Mr. Renner's performance. There is no indication that counsel's decision not to seek appeal was uninformed, and mere disagreement with legal strategy is not a real allegation of deficiency. See Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.") (internal quotations and citation omitted).

21

Nor was it unreasonable for Mr. Renner to decline to seek reconsideration on the basis of the printout, since, as the Court has already explained, the document does not meet the definition of "new evidence," and it indeed corroborates evidence on which the Court's prior decision was based. For all of the reasons above, the interests of justice do not weigh in favor of appointing a new attorney.

25.   Petitioner's motion to withdraw counsel and appoint new defense counsel will be denied. Petitioner's motion for reconsideration will also be denied. An accompanying order will be entered.

**January 19, 2015**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge